**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

JASON D. ODOMS,

     Plaintiff,

v.

BUCKLEY FENCE, LLC, a Colorado limited
liability company;
BUCKLEY & ASSOCIATES, LLC, d/b/a
KAB AGENCY, a Colorado limited liability
company;
JAMES A. BUCKLEY, individually;
KYLE BUCKLEY, individually;
LAUREN BUCKLEY, individually,

     Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Jason D. Odoms, by and through undersigned counsel, Ragab Law Firm, P.C., for his Complaint against Defendants Buckley Fence, LLC; Buckley & Associates, LLC d/b/a KAB Agency; James A. Buckley; Kyle Buckley; and Lauren Buckley, states and alleges as follows:

## I.    __INTRODUCTION__

1. This is an employment discrimination action arising out of Defendants' treatment of Jason D. Odoms, an African-American man over the age of forty who served as the sole Estimator for Defendants' integrated fencing enterprise from March 2021 until his termination on September 25, 2024.

2. Defendants hired Mr. Odoms below the posted salary range for his position, telling him they were taking "a risk" on him, and thereafter paid him substantially less than white employees, denied him the annual raises that every white employee received, and subjected him to heightened scrutiny that no white employee endured.

3. When Mr. Odoms took four weeks of accrued paid time off in early 2023 to receive inpatient treatment for alcohol use disorder, a disability, the owner of the enterprise, Defendant James A. Buckley, personally broadcast Mr. Odoms's private medical information to co-workers and third parties. While Mr. Odoms was still in treatment, James Buckley told a longtime installer that Mr. Odoms "did have an alcohol problem" and that the company was "intending to fade him out."

4. Defendants then executed that plan. Management ridiculed Mr. Odoms's treatment in company-wide sales meetings, declared to the assembled sales force that "I know Jason's background, and he is not capable of doing his job," withheld his promised raises as a "cost" of his treatment, demanded uncompensated overtime that conflicted with his evening sobriety counseling, manufactured a pretextual "error" file against him, and fired the two employees, Tim Lynch and Cindy Thomas, who told Mr. Odoms the truth about what was being said behind his back.

5. On September 25, 2024, six days before Mr. Odoms's compensation was contractually scheduled to become fully vested under a written agreement signed by James Buckley, and ten days after Mr. Odoms satisfied the error-reduction condition James Buckley himself had set for restoration of full profit sharing, Defendants terminated him, claiming his position was "eliminated."

6.      Defendants' own written records (including James Buckley's signed compensation agreement, his handwritten review notes, his July 19, 2024 email confirming the vesting schedule, and the termination letter signed by a KAB Agency principal on Buckley Fence letterhead) document the discrimination, the retaliation, and the joint operation of the two corporate Defendants as a single integrated enterprise and joint employer.

7.      Mr. Odoms brings this action under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Colorado Anti-Discrimination Act, the Colorado Wage Claim Act, and Colorado common law, seeking back pay, front pay, compensatory damages, punitive and liquidated damages, statutory penalties, attorney's fees, and all other available relief.

## II.      PARTIES

8.      Plaintiff Jason D. Odoms ("Mr. Odoms" or "Plaintiff") is an African-American man, born in 1982, and a resident of Denver, Colorado. At all relevant times he was an "employee" within the meaning of Title VII, the ADA, the ADEA, CADA, and the Colorado Wage Claim Act.

9.      Defendant Buckley Fence, LLC ("Buckley Fence") is a Colorado limited liability company, entity ID 20151786595, formed December 8, 2015, with its principal place of business at 6000 E. 49th Drive, Suite 10, Commerce City, Colorado 80022. Its registered agent is James Anthony Buckley, 10359 E. 25th Drive, Aurora, Colorado 80010. Buckley Fence manufactures and sells steel equine fencing throughout the United States and abroad.

10.      Defendant Buckley & Associates, LLC, d/b/a KAB Agency ("KAB"), is, on information and belief, a Colorado limited liability company operating from the same premises at

3

6000 E. 49th Drive, Commerce City, Colorado. KAB holds itself out as a marketing "agency" whose only client is Buckley Fence, and it supplies the sales, marketing, human-resources, and administrative workforce for the Buckley fencing enterprise.

11. Defendant James A. Buckley ("James Buckley") is an individual and resident of Colorado. He is the founder and owner of Buckley Fence and at all relevant times exercised final authority over Plaintiff's compensation, terms of employment, and termination. He is sued in his individual capacity under 42 U.S.C. § 1981.

12. Defendant Kyle Buckley is an individual and resident of Colorado. He is James Buckley's son, a principal of KAB, and, according to his own public professional profile, the Chief Executive Officer of Buckley Fence since March 2019. He is sued in his individual capacity under 42 U.S.C. § 1981.

13. Defendant Lauren Buckley is an individual and resident of Colorado. She is James Buckley's daughter, a principal of KAB, and served as the human-resources authority for the integrated enterprise, including for Buckley Fence personnel. She signed Plaintiff's termination letter as "Director of HR." She is sued in her individual capacity under 42 U.S.C. § 1981.

### III.    JURISDICTION AND VENUE

14. This Court has federal-question jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiff's claims arising under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.

4

15.     This Court has supplemental jurisdiction over Plaintiff's Colorado state-law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because all Defendants reside or are found in Colorado and the unlawful employment practices alleged herein were committed in this District.

## IV.    ADMINISTRATIVE EXHAUSTION AND TIMELINESS

17.     On May 23, 2025, Mr. Odoms dual-filed a verified Charge of Discrimination with the Colorado Civil Rights Division ("CCRD"), Charge No. E2500029780, and the Equal Employment Opportunity Commission ("EEOC"), Charge No. 32A-2025-00848, against "Buckley Fence, LLC dba KAB, et al.," identifying 26+ employees and alleging discrimination based on race, color, mental disability, physical disability, and age, and retaliation, including his September 25, 2024 discharge.

18.     The Charge incorporated a detailed Statement of Discrimination describing the integrated operations of Buckley Fence and KAB and the conduct of James, Kyle, and Lauren Buckley, Michelle Roy, and Jenna Gregory-Preston. Both corporate Defendants received notice of the Charge and responded to it through common counsel, which submitted a single position statement on behalf of both entities on October 23, 2025.

19.     The CCRD issued a Notice of Right to Sue on March 31, 2026. The EEOC issued its Determination and Notice of Rights on May 14, 2026. This action is filed within ninety days of Plaintiff's receipt of the EEOC notice.

5

20.    By written agreement dated June 25, 2026, Buckley Fence (through its counsel, Crosse Law LLC) and Buckley & Associates/KAB (through its counsel, Goodspeed Merrill) each expressly agreed that Mr. Odoms's state-law claims "will not run until August 8/12/26, the same date that his Federal claims Statute of Limitations run." True and correct copies of the confirming correspondence are attached as Exhibits 4 and 5. This action is filed on or before August 12, 2026, and Defendants are estopped from asserting, and have waived, any limitations defense to Plaintiff's CADA claims.

21.    All conditions precedent to suit have been performed, have occurred, or have been waived.

## V.    <u>GENERAL FACTUAL ALLEGATIONS</u>

**A.  Buckley Fence and KAB Operate as a Single Integrated Enterprise and Joint Employer**

22.    Buckley Fence and KAB share the same premises at 6000 E. 49th Drive, Commerce City, Colorado; the same ownership family; the same customers; the same operations; and the same workforce management.

23.    KAB is owned and operated by Kyle Buckley and Lauren Buckley, the children of Buckley Fence's owner, James Buckley. KAB's only client is Buckley Fence. Kyle Buckley simultaneously holds himself out as CEO of Buckley Fence.

24.    In their October 23, 2025 position statement to the CCRD, Defendants admitted that Buckley Fence's "sole employee is its owner, Jim Buckley," that KAB "provides marketing, administrative, and operational support to Buckley," and that KAB employees' "observations and input were reviewed in connection with Mr. Odoms' performance and conduct as part of standard management oversight."

25.     KAB personnel exercised direct and ongoing control over the essential terms and conditions of Mr. Odoms's employment, including his workload, his performance evaluation, the investigation (and non-investigation) of his discrimination complaints, the maintenance of and access to his personnel and medical information, and the decision to terminate him.

26.     Michelle Roy, a KAB manager, functioned as human resources for the enterprise and, as Lauren Buckley admitted to Mr. Odoms in February 2024, had access to sensitive personnel information concerning Buckley Fence employees, including Mr. Odoms.

27.     When Mr. Odoms complained of discrimination to James Buckley, the owner of his W-2 employer, James Buckley directed him to Lauren Buckley at KAB, and KAB purported to conduct the resulting "investigation."

28.     James Buckley told Nick Santos, a Buckley Fence engineer, that "KAB" wanted Mr. Odoms terminated.

29.     Layoffs of Buckley Fence personnel, including Plaintiff's, were carried out by KAB. Plaintiff's September 25, 2024 termination letter was issued on Buckley Fence letterhead but signed by Lauren Buckley of KAB, directed final-pay questions to lauren@kab.agency, and prohibited Mr. Odoms from communicating with "any current Buckley Fence or kab|agency employees", treating the two entities' workforces as one.

30.     James Buckley set Plaintiff's compensation in coordination with KAB, emailing kyle@kab.agency and Lauren Buckley on July 19, 2024 to direct the administration of Plaintiff's salary and profit-sharing vesting schedule.

31.     Profit sharing was administered quarterly across the enterprise workforce without regard to nominal corporate employer, and personnel moved between the entities: for example,

salesperson Tim Lynch, "a sales employee of Buckley Fence who had been transferred to work under KAB managers."

32.     At all relevant times, Buckley Fence and KAB shared interrelated operations, common management, centralized control of labor relations, and common ownership and financial control, constituting a single integrated enterprise; in the alternative, each exercised sufficient control over the terms and conditions of Mr. Odoms's employment to be his joint employer. Together the enterprise employed 26 or more employees, as Defendants themselves recorded on the administrative charge, and at times 30 to 40 or more.

33.     Buckley Fence and KAB are each an "employer" within the meaning of Title VII, the ADA, the ADEA, CADA, and the Colorado Wage Claim Act, whether individually, as an integrated enterprise, or as joint employers of Plaintiff.

**B. Defendants Hire Mr. Odoms Below the Posted Range and Pay Him Less Than White Employees**

34.     Buckley Fence publicly advertised the Estimator position at a salary of $45,000 to $65,000 per year, requiring one year of estimating experience.

35.     Mr. Odoms exceeded the posted qualifications, with prior estimating experience and approximately fifteen years of management, construction-budget, warehouse, logistics, and skilled-trade experience, including operating his own electrical handyman business.

36.     Defendants nonetheless hired Mr. Odoms in March 2021 at $40,800 (below the bottom of the advertised range) with profit-sharing eligibility deferred six months. Mr. Odoms was the only African-American employee in the office.

37.     When Mr. Odoms later asked James Buckley why his pay was so much lower than that of his white co-workers, James Buckley told him the company was "taking a risk" on

8

him and cited a lack of a college degree, even though multiple white male employees without college degrees, including Vic Pizzolato, Brandon, and Brian, and Kyle Buckley himself, were paid substantially more.

38. White employees hired around the same time, including engineer Nick Santos and logistics manager Jon Ward, started at or above $60,000 and, with profit sharing, earned up to approximately $90,000 per year, while performing work requiring no greater skill or responsibility and while Mr. Odoms trained across multiple departments including estimating, warehouse, and logistics functions.

39. As Jon Ward has attested under oath: Mr. Odoms "was subject to being profiled due to what I feel was his race and not because of his strong work ethic and experience within the company," and "We were rewarded with a pay raise each year at our annual review, Jason was the only one who was not."

## C. Mr. Odoms Complains of Pay Discrimination; the March 2022 Written Compensation Agreement

40. At his first annual review in March 2022, Mr. Odoms complained to James Buckley about the racial disparity in pay. This was protected opposition to pay discrimination.

41. Rather than equalize Mr. Odoms's total compensation, James Buckley conditioned any base-salary increase on Mr. Odoms surrendering half of his profit sharing, a condition imposed on no white employee, whose raises never required forfeiting profit sharing.

42. The parties executed a written agreement dated and signed March 17, 2022 (the "Compensation Agreement"), in James Buckley's hand, providing: effective 3/15/22, a $60,000 base salary plus 50% of profit sharing indexed to $40,000; effective 3/15/23, "Base plus increase" plus 65% of profit sharing indexed to $50,000; effective 3/15/24, "Base plus increase"

plus 85% of profit sharing indexed to $60,000; and effective 3/15/25, "full profit sharing vestige indexed to full salary." A true and correct copy is attached as Exhibit 1.

43.     The Compensation Agreement thus contractually promised Mr. Odoms annual base-salary increases in March 2023 and March 2024 and a defined restoration of full profit sharing.

44.     The March 2022 raise was the only raise Mr. Odoms ever received in three and one-half years, while every white employee received annual raises, including employees with unsatisfactory reviews.

**D.  Mr. Odoms's Disability, His Medical Leave, and the Company-Funded Treatment Loan**

45.     Mr. Odoms suffers from alcohol use disorder, a physical and mental impairment that substantially limits major life activities including neurological and brain function, sleep, concentration, and the care of oneself. He is a qualified individual with a disability, has a record of such disability, and was regarded by Defendants as disabled.

46.     Mr. Odoms was sober for three years when hired. Beginning in 2022–2023, Defendants quadrupled the sales force whose estimates Mr. Odoms alone produced (from two salespeople to nine) while subjecting him to micromanagement and scrutiny not applied to white employees.

47.     In early 2023, Mr. Odoms relapsed and sought inpatient treatment. He disclosed his condition to Defendants and requested leave, a reasonable accommodation, which he covered with his own accrued PTO, having taken no vacation in two years.

48.     Because Defendants provided Mr. Odoms no health insurance, James Buckley paid the treatment facility $7,754.25 (payments of $6,154.25 on February 27, 2023 and $1,600

on March 13, 2023) as a loan, which Defendants recouped from Mr. Odoms's profit-sharing compensation. Mr. Odoms was told that if he did not accept the loan and obtain treatment, he would lose his job. He repaid the loan in full.

49.    James Buckley memorialized the arrangement in a May 8, 2023 email to the company's accountant, describing the treatment payment and "lost time" as debts Mr. Odoms owed the company, writing that "it is officially a loan to Jason that he will be repaying via his earnings in the profit sharing program" and that the company would "square up" his "excess" time off.

**E.  "Intending to Fade Him Out": James Buckley Broadcasts Mr. Odoms's Disability and Forms the Plan to Terminate Him**

50.    While Mr. Odoms was still in treatment, James Buckley disclosed Mr. Odoms's confidential medical circumstances to co-workers and third parties.

51.    Tim Jantz, an installer who had worked with Buckley Fence for approximately twenty-five years, has attested under oath that while Mr. Odoms "was at rehab," James Buckley "spoke negatively of Jason," "described Jason's lack of performance due to needing time off for a substance abuse situation," and, after Mr. Jantz protested that it was none of his business, "continued to say that Jason did have an alcohol problem and that they were intending to fade him out."

52.    Mr. Odoms had not disclosed his treatment to co-workers. Yet when he returned to work in the spring of 2023, the entire company knew. A later-hired office manager likewise arrived already knowing of his rehabilitation.

11

53.    KAB managers Michelle Roy and Jenna Gregory-Preston openly told other employees that Mr. Odoms "didn't deserve to have" his job after "being gone so long," and ridiculed his treatment and character in meetings.

54.    By contrast, at least two white employees, Brandon and Brian, each took substantially longer rehabilitation leaves (months, not weeks) during their employment and returned to encouragement and support, with no ridicule, no raise denial, no disclosure campaign, and no discipline.

## F.  Mr. Odoms's First Formal Complaint and Defendants' Retaliation Against Tim Lynch

55.    Salesperson Tim Lynch told Mr. Odoms what Roy and Gregory-Preston were saying.  In or about March 2023, Mr. Odoms formally complained to James Buckley about the discriminatory and retaliatory disparagement of his disability.

56.    No genuine investigation occurred. The sole "discipline" was a March 31, 2023 email from Roy that denied any "baradment" [sic] behind Mr. Odoms's back and offered excuses.

57.    Shortly after Mr. Odoms's complaint, Defendants fired Tim Lynch, the employee who had truthfully reported the disparagement.

58.    James Buckley promised Mr. Odoms a performance review upon his return from treatment, delayed six months; it never occurred. Mr. Odoms received no review and no raise in 2023, in breach of the Compensation Agreement's promised 3/15/23 "Base plus increase." When Mr. Odoms asked why, James Buckley told him his month in treatment was a "cost" to the company and, at other times, that he had "accelerated Jason's pay too much."

**G. The Harassment Escalates; Mr. Odoms's Second Formal Complaint; Defendants Fire Cindy Thomas Two Days Later**

59.    In mid-February 2024, KAB employee Cindy Thomas informed Mr. Odoms that, during a sales meeting attended by the entire sales force, Michelle Roy declared: "I know Jason's background, and he is not capable of doing his job."

60.    On or about February 19–20, 2024, Ms. Thomas further reported that Roy was blaming Mr. Odoms in a KAB-only Slack channel for errors he did not make.

61.    On February 20, 2024, Mr. Odoms made his second formal complaint of discrimination to James Buckley, accompanied by engineer Nick Santos as a witness. Mr. Odoms asked whether Roy had access to his sensitive personnel information; James Buckley claimed she did not and directed Mr. Odoms to take his discrimination complaint to Lauren Buckley, the owner's daughter and a principal of the very organization whose managers were the subject of the complaint.

62.    Mr. Odoms called Lauren Buckley that day. She defended Roy, accused Ms. Thomas of "making it up," claimed no recollection of the statements, pressed Mr. Odoms to name the other employees who had confided their discomfort (he declined to expose them), and, contradicting her father, admitted that Roy did have access to sensitive HR information.

63.    Neither James nor Lauren Buckley ever interviewed Cindy Thomas, the identified witness.

64.    Two days later, on February 22, 2024, Defendants fired Cindy Thomas. Ms. Thomas was told she was let go because she had shared Roy's comments with Mr. Odoms. Ms. Thomas, a high performer who had closed multiple large projects in her first month, has attested to these events under oath.

65.     Around this same time, James Buckley told Nick Santos that KAB wanted Mr. Odoms fired and solicited Santos's opinion; Santos defended Mr. Odoms, identifying the real problem as an overworked, unsupported employee.

## H. The March 2024 Review: Raise Denied Again, Uncompensated Overtime Demanded, Survey Withheld

66.     At his March 2024 annual review, Mr. Odoms was again denied the contractually promised raise (his second consecutive year without one) while every non-African-American colleague received annual raises.

67.     James Buckley's own handwritten review notes concede that Mr. Odoms "gets along with all," "helped John McClary," and was "OK the basic 8-5"; they fault him only for not working beyond his scheduled hours and for "errors" in final results, and record James Buckley's view that Mr. Odoms's "base is too high."

68.     James Buckley demanded that Mr. Odoms, a salaried employee, regularly work past 5:00 p.m. and in the warehouse "as needed," without additional compensation. Mr. Odoms reminded him, repeatedly, that he attended evening sobriety groups and counseling multiple times per week as part of his ongoing recovery. James Buckley persisted in the demand. No white employee was required to work overtime.

69.     Defendants also excluded Mr. Odoms from the written company-feedback survey provided to all white employees at their reviews.

70.     Financial strain from Defendants' suppressed compensation forced Mr. Odoms to take a second, part-time retail job to support his daughter and grandmother.

14

### I.  The Manufactured "Error" Narrative

71.     Following Mr. Odoms's complaints, KAB management, including Roy, set out to build a termination file, instructing new hires to document or record Mr. Odoms's supposed mistakes, as KAB's own systems trainee, Cindy Thomas, has attested.

72.     The "errors" attributed to Mr. Odoms were predominantly errors by the rapidly expanded, undertrained sales force whose data he depended upon. When Mr. Odoms and Nick Santos reviewed the company's error list line by line, Mr. Odoms's actual accuracy rate was approximately 92.6%, a figure James Buckley acknowledged.

73.     On a sticky note dated March 13, 2024, James Buckley wrote: "Jason to reduce error rate to 10% of now by 9/13/24 then full profit sharing." His quarterly notes likewise record the offer: "reduce est errors by 80% and @ 9/15/24 go to 100% PS on $60K."

74.     By September 2024, Mr. Odoms had met the condition, reducing his attributable error rate to zero.

### J.  Defendants Terminate Mr. Odoms Six Days Before Full Vesting

75.     On July 19, 2024, James Buckley emailed Kyle Buckley and Lauren Buckley confirming Plaintiff's compensation trajectory: a "virtual salary" at 85% of $60,000 through the third quarter of 2024, and "[b]eginning at the start of the 4th quarter (October 1, 2024) his $60,000 will be fully vested and his monthly rate in that quarter will be the full $60,000." A true and correct copy is attached as Exhibit 2.

76.     On September 25, 2024, ten days after the September 15 error-reduction milestone Mr. Odoms had satisfied, and six days before the October 1 full-vesting date James Buckley had confirmed in writing, Defendants terminated Mr. Odoms.

77. The termination letter, on Buckley Fence letterhead and signed by Lauren Buckley, asserted that the Estimator position "is being eliminated and is subject to a layoff." A true and correct copy is attached as Exhibit 3.

78. Defendants' explanations for the termination have shifted: performance "errors"; then "automation" and elimination of the role; then, in their administrative position statement, both at once. Each explanation is pretextual. The plan to "fade out" Mr. Odoms was formed no later than early 2023, while he was in treatment, as James Buckley admitted to Tim Jantz, and was executed on the eve of vesting.

79. Defendants did not pay Mr. Odoms the fourth-quarter 2024 profit sharing or fully vested compensation he had earned, did not pay out his accrued, unused PTO, and conditioned severance on a release Mr. Odoms declined to sign. His final check was $1,846.16.

80. The termination letter further directed that Mr. Odoms not communicate with any Buckley Fence or KAB employee and not return to the premises, isolating him from the witnesses to his mistreatment.

81. After termination, Defendants failed to timely respond to the Colorado Division of Unemployment Insurance's request for separation information, forfeiting their right to contest Mr. Odoms's unemployment claim.

**K.  Comparators and Pattern Evidence**

82. White employees similarly situated to Mr. Odoms in relevant respects were treated more favorably in pay, raises, profit sharing, scrutiny, discipline, medical privacy, and accommodation, including: Nick Santos and Jon Ward (higher starting and total compensation; annual raises; no forfeiture conditions); Vic Pizzolato (approximately $100,000 without a college

16

degree); and Brandon and Brian (extended rehabilitation leaves met with support rather than disclosure, ridicule, raise denial, and termination).

83.     Defendants' treatment of other minority workers evidences the same pattern, including pressuring warehouse worker Shadeed Abraham to conceal a workplace injury as non-work-related; subjecting Josh Robinson, a Black warehouse hire, to a criminal background check run only after he had signed and accepted the position, and then advising him that Defendants were considering withdrawing his accepted offer, while a white employee hired into a similar warehouse position approximately one month earlier was subjected to no background check at all; and steering premium referrals away from the enterprise's highest-rated installer, who is of Mexican descent, to white installers.

## L.  Injury and Damages

84.     As a direct and proximate result of Defendants' conduct, Mr. Odoms has suffered and continues to suffer lost wages and benefits, including back pay, unpaid vested compensation and profit sharing, accrued PTO, front pay, and diminished earning capacity; he has remained underemployed since his termination, earning less than his Buckley compensation despite diligent mitigation.

85.     Mr. Odoms has further suffered severe emotional distress, humiliation, anxiety, depression, sleep disturbance, and physical manifestations of stress, for which he has received ongoing professional counseling, as well as harm to reputation and loss of enjoyment of life.

86.     Defendants' conduct was intentional, malicious, willful, and wanton, and undertaken with reckless indifference to Mr. Odoms's federally and state-protected rights,

17

warranting punitive and liquidated damages. Defendants knew their legal obligations (their own handbook recites them) and disregarded them.

## COUNT I: RACE DISCRIMINATION
### (42 U.S.C. § 1981: Against All Defendants)

87.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

88.     Mr. Odoms, an African-American man, had and sought to make, perform, modify, and enforce contracts (including his employment relationship, the Compensation Agreement, and the profit-sharing terms) and to enjoy all benefits, privileges, terms, and conditions of those contractual relationships.

89.     Defendants intentionally discriminated against Mr. Odoms because of his race in the making, performance, modification, termination, and enjoyment of his employment contract, including by paying him below-market and below-comparator compensation; conditioning his raise on forfeiting profit sharing; denying him the annual raises given to every white employee; subjecting him to heightened scrutiny and a manufactured error file; excluding him from the employee survey; and terminating him.

90.     But for Mr. Odoms's race, Defendants would not have taken these adverse actions.

91.     James Buckley, Kyle Buckley, and Lauren Buckley each personally participated in, directed, authorized, or ratified the discriminatory conduct: James Buckley set the discriminatory pay, made the "risk" and degree statements, denied the raises, and authorized the termination; Kyle Buckley, as CEO of Buckley Fence and principal of KAB, jointly administered Plaintiff's compensation and pressed for his termination; Lauren Buckley controlled the sham investigation, defended the harasser, and executed the termination.

18

92.     As a direct and proximate result, Mr. Odoms suffered the damages described above.

Defendants acted with malice or reckless indifference to Mr. Odoms's federally protected rights, entitling him to punitive damages, which are uncapped under § 1981.

### COUNT II: HOSTILE WORK ENVIRONMENT
### (42 U.S.C. § 1981: Against All Defendants)

93.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

94.     Defendants subjected Mr. Odoms to unwelcome harassment because of his race, including racially disparate scrutiny and blame, public disparagement of his "background" and competence, exclusion from workplace benefits, and a sustained campaign to discredit him, which was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment.

95.     Defendants knew of the harassment (Mr. Odoms complained formally at least twice) and not only failed to take prompt remedial action but retaliated against the witnesses who corroborated it.

96.     As a direct and proximate result, Mr. Odoms suffered the damages described above, and Defendants' malice or reckless indifference entitles him to punitive damages.

### COUNT III: RETALIATION
### (42 U.S.C. § 1981: Against All Defendants)

97.     Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

98.     Mr. Odoms engaged in protected activity under § 1981, including his March 2022 complaint of racial pay discrimination, his March 2023 complaint, and his February 20, 2024 complaint of race- and disability-based disparagement and unequal treatment.

19

99.     Defendants took materially adverse actions against him because of that protected activity, including reducing his profit-sharing percentage immediately after his first complaint; withholding his 2023 and 2024 raises; intensifying the manufactured error campaign; terminating the corroborating witnesses; and terminating his employment.

100.    A causal connection exists between the protected activity and the adverse actions, as shown by, among other things, temporal proximity, Defendants' shifting explanations, the admitted plan to "fade him out," and the firing of Lynch and Thomas for truthfully supporting him.

101.    As a direct and proximate result, Mr. Odoms suffered the damages described above, and Defendants' malice or reckless indifference entitles him to punitive damages.

## COUNT IV: DISCRIMINATION BASED ON RACE AND COLOR
### (Title VII, 42 U.S.C. § 2000e-2: Against Buckley Fence and KAB)

102.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

103.    Buckley Fence and KAB, individually and as an integrated enterprise and joint employers, discriminated against Mr. Odoms with respect to his compensation, terms, conditions, and privileges of employment, and discharged him, because of his race and color, in violation of 42 U.S.C. § 2000e-2(a).

104.    The discrimination includes the below-range hire, the racially disparate pay and raise practices, the forfeiture condition, the disparate scrutiny and discipline, the exclusion from the survey, and the September 25, 2024 discharge.

105.    The corporate Defendants acted with malice or reckless indifference to Mr. Odoms's federally protected rights, entitling him to compensatory and punitive damages, back pay, front pay, and attorney's fees.

20

## COUNT V: HOSTILE WORK ENVIRONMENT
### (Title VII, 42 U.S.C. § 2000e-2: Against Buckley Fence and KAB)

106.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

107.    The corporate Defendants subjected Mr. Odoms to a hostile work environment because of his race and color, as alleged above; the harassment was severe or pervasive, was known to Defendants through his complaints, and went unremedied.

108.    At least one act contributing to the hostile environment occurred within the statutory charge-filing period, rendering the entire course of conduct actionable.

109.    As a direct and proximate result, Mr. Odoms suffered the damages described above.

## COUNT VI: RETALIATION
### (Title VII, 42 U.S.C. § 2000e-3: Against Buckley Fence and KAB)

110.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

111.    Mr. Odoms engaged in activity protected by Title VII when he opposed race discrimination in March 2022, March 2023, and February 2024.

112.    The corporate Defendants took materially adverse actions against him because of that opposition, culminating in his discharge, and also punished the employees who corroborated his complaints, conduct that would dissuade any reasonable worker from complaining.

113.    As a direct and proximate result, Mr. Odoms suffered the damages described above, entitling him to all relief available under Title VII.

## COUNT VII: DISABILITY DISCRIMINATION
### (ADA, 42 U.S.C. § 12112: Against Buckley Fence and KAB)

114.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

115.    Mr. Odoms is a qualified individual with a disability (alcohol use disorder) with a record of disability, and was regarded as disabled; he could perform the essential functions of his position with or without reasonable accommodation, as his 92.6% verified accuracy and Defendants' own review notes confirm.

116.    The corporate Defendants discriminated against him because of his disability, including by broadcasting his confidential medical information, ridiculing his treatment, withholding his raises expressly because his treatment was a "cost," recouping his treatment expenses from his earnings, subjecting him to a hostile work environment because of his disability, and discharging him pursuant to a plan ("intending to fade him out") formed while he was on medical leave.

117.    Similarly situated non-disabled employees, and white employees whose substance-use treatment was longer, were treated more favorably.

118.    Defendants acted with malice or reckless indifference, entitling Mr. Odoms to compensatory and punitive damages, back pay, front pay, and attorney's fees.

### COUNT VIII: FAILURE TO ACCOMMODATE
### (ADA, 42 U.S.C. § 12112(b)(5): Against Buckley Fence and KAB)

119.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

120.    Mr. Odoms's ongoing recovery required attendance at evening counseling and sobriety groups multiple times per week, of which Defendants had repeated, explicit notice.

121.    A schedule permitting Mr. Odoms to leave at the end of his regular 8:00–5:00 shift was a reasonable accommodation imposing no undue hardship; indeed, Defendants' own review notes confirm he completed his work within that schedule.

22

122.    Defendants refused the accommodation and foreclosed the interactive process, instead demanding open-ended, uncompensated evening and warehouse work in direct conflict with his treatment schedule, and penalizing him in his review for declining to surrender his recovery.

123.    As a direct and proximate result, Mr. Odoms suffered the damages described above.

## COUNT IX: RETALIATION AND INTERFERENCE
### (ADA, 42 U.S.C. § 12203: Against Buckley Fence and KAB)

124.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

125.    Mr. Odoms engaged in protected activity under the ADA by requesting and taking disability leave, by requesting accommodation of his treatment schedule, and by complaining of disability-based harassment and disclosure of his medical information.

126.    The corporate Defendants retaliated against him and interfered with his exercise of ADA rights, including through raise denials characterized as the "cost" of his treatment, the hostile campaign upon his return, and his discharge.

127.    As a direct and proximate result, Mr. Odoms suffered the damages described above.

## COUNT X: AGE DISCRIMINATION
### (ADEA, 29 U.S.C. § 623: Against Buckley Fence and KAB)

128.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

129.    Mr. Odoms was over forty at all relevant times and was qualified for his position.

130.    The corporate Defendants, who employed twenty or more employees as an integrated enterprise and joint employers, discriminated against him because of his age in

23

compensation, terms, and conditions of employment, including denying him raises and the survey provided to younger employees, subjecting him to harassment, and discharging him while shifting his duties to a younger workforce and automated processes.

131.    Age was a but-for cause of the adverse actions, and Defendants' violation was willful, entitling Mr. Odoms to liquidated damages under 29 U.S.C. § 626(b).

### COUNT XI: DISCRIMINATION AND HARASSMENT BASED ON RACE, COLOR, DISABILITY, AND AGE
### (CADA, C.R.S. § 24-34-402: Against Buckley Fence and KAB)

132.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

133.    The corporate Defendants engaged in discriminatory and unfair employment practices against Mr. Odoms because of his race, color, disability, and age, in compensation, terms, conditions, and privileges of employment, and by discharging and harassing him, in violation of C.R.S. § 24-34-402(1)(a).

134.    With respect to conduct on and after August 7, 2023, Defendants' harassment of Mr. Odoms (including the public disparagement of his disability and competence and the manufactured blame campaign) constitutes unlawful harassment under C.R.S. § 24-34-402(1)(a) as amended by the POWR Act, without regard to whether it was severe or pervasive.

135.    Defendants failed to initiate any adequate investigation of Mr. Odoms's complaints and maintained no meaningful harassment prevention program; their purported investigation was conducted by the accused organization's own principal.

136.    This claim is timely pursuant to the parties' June 25, 2026 written agreement extending the deadline for Plaintiff's state-law claims to August 12, 2026 (Exhibits 4–5), and Defendants have waived and are estopped from asserting any limitations defense.

24

137.    As a direct and proximate result, Mr. Odoms suffered the damages described above, entitling him to all relief available under C.R.S. § 24-34-405, including compensatory and punitive damages and attorney's fees.

## COUNT XII: RETALIATION
### (CADA, C.R.S. § 24-34-402(1)(e): Against Buckley Fence and KAB)

138.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

139.    Mr. Odoms engaged in protected activity under CADA by opposing discriminatory practices in March 2022, March 2023, and February 2024.

140.    The corporate Defendants retaliated against him through the adverse actions alleged above, culminating in his discharge, and discharged employees Lynch and Thomas for aiding his opposition, itself evidence of Defendants' retaliatory animus.

141.    This claim is timely pursuant to the parties' June 25, 2026 tolling agreement, as alleged above.

142.    As a direct and proximate result, Mr. Odoms suffered the damages described above.

## COUNT XIII: BREACH OF CONTRACT
### (Colorado Common Law: Against Buckley Fence and KAB)

143.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

144.    The March 17, 2022 Compensation Agreement, signed by James Buckley on behalf of the enterprise, is a valid and enforceable contract supported by consideration, including Mr. Odoms's surrender of fifty percent of his profit sharing and his continued employment.

145.    The Compensation Agreement obligated Defendants to pay Mr. Odoms a base-salary increase effective March 15, 2023 and March 15, 2024, escalating profit-sharing

25

percentages (65% indexed to $50,000, then 85% indexed to $60,000), and full restoration by March 15, 2025; James Buckley's July 19, 2024 email confirmed full vesting of the $60,000 rate effective October 1, 2024, and his March 2024 notes confirmed the promise of 100% profit sharing upon the error-reduction milestone Mr. Odoms achieved.

146.    Mr. Odoms performed all conditions required of him.

147.    Defendants materially breached by withholding the 2023 and 2024 increases, by failing to restore and pay the promised profit sharing, and by terminating Mr. Odoms days before vesting to avoid their obligations, thereby also breaching the implied covenant of good faith and fair dealing with respect to the contract's discretionary vesting terms.

148.    As a direct and proximate result, Mr. Odoms suffered damages including unpaid increases, unpaid profit sharing, and the vested compensation he was denied, in an amount to be proven at trial, plus pre- and post-judgment interest.

### COUNT XIV: PROMISSORY ESTOPPEL
**(Colorado Common Law, in the Alternative: Against Buckley Fence and KAB)**

149.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

150.    In the alternative, Defendants promised Mr. Odoms annual increases, escalating and ultimately full profit sharing, and full vesting effective October 1, 2024, and should reasonably have expected those promises to induce action or forbearance.

151.    Mr. Odoms reasonably and detrimentally relied on those promises, including by surrendering profit sharing, foregoing other employment, accepting reduced pay to repay the treatment loan, and meeting the September 2024 error-reduction milestone.

152.    Injustice can be avoided only by enforcement of the promises, and Mr. Odoms is entitled to damages in an amount to be proven at trial.

**COUNT XV: UNPAID WAGES AND COMPENSATION**
**(Colorado Wage Claim Act, C.R.S. §§ 8-4-101 et seq.: Against Buckley Fence and KAB)**

153.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

154.    At termination, Mr. Odoms had earned, vested, and determinable compensation that Defendants failed to pay, including fourth-quarter 2024 profit sharing and vested salary per the July 19, 2024 confirmation, the restored profit sharing promised upon the achieved error-reduction milestone, and accrued, unused paid time off, which under Colorado law cannot be forfeited.

155.    Defendants failed to pay these wages upon separation as required by C.R.S. § 8-4-109, and their nonpayment was willful.

156.    Plaintiff has made or will make written demand for the unpaid wages; Defendants' failure to pay within fourteen days subjects them to statutory penalties of up to two times the unpaid wages or, upon a showing of willfulness, three times, together with attorney's fees and costs under C.R.S. §§ 8-4-109 and 8-4-110.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jason D. Odoms respectfully requests that this Court enter judgment in his favor and against Defendants, jointly and severally, and award:

a.    Back pay, front pay, and lost benefits, including unpaid salary increases, vested compensation, profit sharing, and accrued paid time off, with pre- and post-judgment interest at the highest lawful rates;

b.    Compensatory damages for emotional distress, humiliation, inconvenience, loss of enjoyment of life, and reputational harm;

27

c.      Punitive damages under 42 U.S.C. § 1981, Title VII, the ADA, CADA, and Colorado law;

d.      Liquidated damages under the ADEA for Defendants' willful violation;

e.      Statutory penalties of two or three times the unpaid wages under the Colorado Wage Claim Act;

f.      Reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 1988, 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 12205, 29 U.S.C. § 626(b), C.R.S. § 24-34-405, and C.R.S. § 8-4-110;

g.      Equitable relief as appropriate, including reinstatement or front pay in lieu thereof; and

h.      Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 11th day of August 2026.

RAGAB LAW FIRM, P.C.

*s/ Sami M. Ragab*
Sami M. Ragab, #49537
Bryan R. Kaufman, #44241
Ragab Law Firm, P.C.
700 Seventeenth Street, Suite 900
Denver, CO 80202
Telephone: (720) 776-8853
E-mail:   sami@ragablawfirm.com
               bryan@ragablawfirm.com
*Attorneys for Plaintiff Jason D. Odoms*

Plaintiff's Address:
3276 Olive Street
Denver, Colorado 80207